## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID HOLMSTROM, ZINA HOLMSTROM,
and ROBERT HOLMSTROM,

       Plaintiffs,

v.                                  No. CIV 15-0668 RB/GJF

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF CHAVES, CHAVES
COUNTY SHERIFF'S DEPARTMENT,
KEITH RIGHTSELL, DEPUTY, in his individual
Capacity and as an employee of the Chaves County
Sheriff's Department, RACHELLE ABERNATHY,
DEPUTY, in her individual capacity and as an
employee of the Chaves County Sheriff's Department,
ROBBY COON, SHERIFF OF CHAVES COUNTY,
in his individual capacity and as an employee of the
Chaves County Sheriff's Department,

       Defendants.

### MEMORANDUM OPINION AND ORDER

       This matter is before the Court on Defendants Board of Commissioners for the County of

Chaves, Chaves County Sheriff's Department, and Robby Coon's Motion to Dismiss and for

Qualified Immunity, filed on November 19, 2015 (Doc. 11), and on Defendants Rightsell and

Abernathy's Partial Motion to Dismiss on the Basis of Qualified Immunity, filed on December 8,

2015 (Doc. 16). Jurisdiction arises under 28 U.S.C. § 1331.

       Having considered the submissions of counsel and relevant law, the Court will **GRANT**

**IN PART** Defendants' motions to dismiss as outlined below.

## I.     Procedural Background

This lawsuit arises out of an incident where Defendants Abernathy and Rightsell, both deputy sheriffs, accompanied Plaintiff Zina Holmstrom (Plaintiff Zina) to her home to assist her in the removal of some personal property on the evening of August 3, 2013. (Doc. 1 at ¶¶ 19–20, 23.) During the course of the evening, Defendants ended up in a physical altercation with, and ultimately arrested, Plaintiff David Holmstrom (Plaintiff David). (*Id.* at ¶¶ 25–26, 28–32.) Defendants also arrested Plaintiff Robert Holmstrom (Plaintiff Robert) for resisting, evading, or obstructing an officer. (*Id.* at ¶ 34.) All three plaintiffs bring multiple causes of action against the deputies, the sheriff, and the county for the incident. (*See id.* at ¶¶ 54–96.)

Plaintiffs filed their complaint in this Court alleging (1) excessive force in violation of the Fourth Amendment against Defendants Abernathy, Coon, and Rightsell; (2) negligent hiring, training, supervision, and retention against Defendants Chaves County, Chaves County Sheriff's Department, and Sheriff Coon; (3) malicious prosecution against Defendants Abernathy, Coon, and Rightsell; (4) respondeat superior against Defendants Chaves County and Chaves County Sheriff's Department; and (5) assault, battery, false arrest, and false imprisonment under the New Mexico Tort Claims Act against Defendants Abernathy, Coon, and Rightsell. (*Id.* at ¶¶ 54–96.)

Defendants' motions are ripe and ready for decision.

## II.    Statement of Facts

The following facts are as alleged in Plaintiffs' Complaint. Plainitiff Zina called the Chaves County Sheriff's Department for a non-emergency "civil standby" on August 3, 2013. (Doc. 1 at ¶ 19.) Defendant Rightsell responded and accompanied Plaintiff Zina to her residence to retrieve some personal property. (*Id.* at ¶ 20.) Plaintiff David (Zina's husband) and Plaintiff Robert (the couple's son) were sitting on a flat-bed trailer on the property when Plaintiff Zina and Defendant

Rightsell arrived. (*Id.* at ¶ 23.) Plaintiff David immediately informed Defendants Rightsell and Abernathy that there were several firearms on the porch, which Plaintiff Zina would be taking.[1] (*Id.* at ¶ 24.)

At this point, Defendant Rightsell became belligerent and confrontational and used excessive profanity toward Plaintiffs David and Robert. (*Id.* at ¶ 25–26.) After Plaintiff Zina loaded the firearms into her vehicle, Plaintiff David began walking back to the residence. (*Id.* at ¶ 28.) For reasons unexplained in the Complaint, Defendant Rightsell approached Plaintiff David and struck him with a baton several times. (*Id.* at ¶ 29.) Defendant Abernathy also approached and sprayed Plaintiff David several times in the face with OC spray. (*Id.* at ¶ 30.) Defendant Rightsell manhandled Plaintiff David to the ground to put handcuffs on him. (*Id.* at ¶ 31.) At some point during the confrontation, Defendant Rightsell broke Plaintiff David's left arm. (*Id.* at ¶ 32.)

Upon seeing the confrontation, Plaintiff Robert called 911. (*Id.* at ¶ 33.) An unnamed law enforcement officer (possibly Defendant Abernathy, who signed the police report) handcuffed Plaintiff Robert and put him under arrest for resisting, evading, or obstructing an officer. (*Id.* at ¶¶ 34, 44, 46.) Plaintiff Zina saw the altercation and returned to the residence to ask about the status of her family. (*Id.* at ¶ 35.) When Plaintiff Zina asked Defendant Rightsell why Plaintiff Robert had been arrested, he replied, "because he (Robert) is acting like a bitch." (*Id.* at ¶ 36.) At Defendant Rightsell's direction, a law enforcement officer (who is not identified in the Complaint) handcuffed Plaintiff Zina and drove her to Eastern New Mexico Medical Center, stranding her there without her vehicle. (*Id.* at ¶¶ 37–38.) The officer immediately released Plaintiff Zina, who walked almost ten miles back to her residence. (*Id.* at ¶ 39.)

---

[1] It is unclear from the Complaint when Defendant Abernathy arrived on the scene. It is also unclear how many other law enforcement officers, if any, were on the scene. (*See* Doc. 1 at ¶ 24, 34, 37.)

An unnamed officer (possibly Defendant Rightsell, who signed the police report) arrested Plaintiff David for resisting, evading, or obstructing an officer and transported him to the Eastern New Mexico Medical Center. (*Id.* at ¶ 40, 44–45.) At the hospital, Defendant Rightsell commanded Plaintiff David to take off his clothes so that someone could take photographs of David's injuries. (*Id.* at ¶ 41.)

Plaintiffs contend that Defendants Rightsell and Abernathy had no reasonable belief, suspicion, or probable cause to believe that any of the three Plaintiffs had committed or were about to commit a crime or presented any kind of threat after the civil standby was accomplished. (*Id.* at ¶¶ 43, 47.) Plaintiffs suffered mental distress, fear, severe anxiety, and emotional suffering due to the incident; Plaintiff David also suffered physical injury. (*Id.* at ¶¶ 49–51.)

## III.    Motion to Dismiss Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## IV.    Discussion

### A.    Count I—Excessive Force Against Defendants Abernathy, Coon, and Rightsell

Plaintiffs bring a claim for excessive force against "all named officers" in Count I. (Doc. 1 at ¶¶ 54–61.) Defendants Abernathy, Coon, and Rightsell all assert they are entitled to qualified immunity for the excessive force claim. (Docs. 11 at 7, 15–16; 16 at 3–8.) In their response to

Defendants Abernathy and Rightsell's motion to dismiss, Plaintiffs allege that they also intend to bring a claim under Count I for unreasonable seizure. (Doc. 23 at 3–4.) While no Defendant moved to dismiss on unreasonable seizure, the Court will examine the seizure of each Plaintiff, in turn, relating to the excessive force claim.

### 1. Law Regarding Unreasonable Seizure

"The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citing *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984) (internal citations omitted)). On one end of the spectrum are consensual encounters, which "are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing." *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (internal citations omitted)). "On the opposite extreme are arrests, which are 'characterized by highly intrusive or lengthy search or detention.'" *Id.* (quoting *Cooper*, 733 F.2d at 1363). An officer needs "probable cause to believe" that the arrestee has committed a crime to effectuate a warrantless arrest. *Id.* (citing *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).

The third type of encounter rests somewhere in the middle and is known as a *Terry* stop or an investigative detention. *See id.* In an investigative detention, "[a]n officer 'can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver*, 209 F.3d at 1186 (internal citations omitted)). "The court views the totality of the circumstances to see whether the detaining officer had a 'particularized and objective basis' for suspecting legal wrongdoing."

*Cortez*, 478 F.3d at 1123 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citation omitted)).

The Tenth Circuit has identified a fourth type of police/citizen encounter. In *United States v. Maddox*, the Tenth Circuit extended Supreme Court precedent allowing officers to perform "protective sweeps," *see Maryland v. Buie*, 494 U.S. 325, 333 (1990), to also allow officers to conduct "protective detentions" of individuals who are not under arrest or suspected of criminal activity where there is a "reasonable and articulable suspicion of potential danger to the arresting officers." *Maddox*, 388 F.3d 1356, 1367 (10th Cir. 2004) (citing *Buie*, 494 U.S. at 333). Such a seizure must "be justified at its inception," and "the scope of [the] seizure employed must also be reasonable under the circumstances." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–21 (1968)).

> ### a.    The protective detention of Plaintiff Zina was justified at its inception.

Plaintiffs' factual allegations lead to the straightforward conclusion that Defendants arrested Plaintiffs David and Robert. (Doc. 1 at ¶¶ 34, 40.) Whether or not the arrests were lawful is an issue for another day. To determine whether the amount of force Defendants used on Plaintiff Zina was excessive, the Court must decide what type of encounter occurred between Defendants and Zina. Given that we are only looking at the Complaint, there are no allegations of criminal activity on the part of any Plaintiff; therefore, the Court does not find that Defendants' "conduct can accurately be categorized" at this stage of the proceedings as an arrest or investigative detention. *Smith v. Kenny*, 678 F. Supp. 2d 1124, 1169 (D.N.M. 2009). (*See also* Doc. 1 at ¶¶ 18–38.)

After the violent encounter with Plaintiff David and the arrests of David and Plaintiff Robert, Plaintiff Zina approached the Defendants to ask about her family. (Doc. 1 at ¶ 35.) After

Defendant Rightsell told Plaintiff Zina her son was "acting like a bitch[,]" he ordered a sheriff's deputy to handcuff Plaintiff Zina and drive her to the Eastern New Mexico Medical Center. (*Id.* at ¶¶ 36–37.) Upon arrival at the hospital, the deputy immediately released Plaintiff Zina. (*Id.* at ¶¶ 38–39.) It appears to the Court that under these circumstances, the officers were conducting a protective detention. *See Maddox*, 388 F.3d at 1367. The issue here is whether the protective detention of Plaintiff Zina was "justified at its inception," and whether handcuffing Zina and transporting her via police car to the hospital was reasonable under the circumstances. *See id.*

In *Maddox*, three law enforcement officers went to a residence to serve an arrest warrant on a fugitive wanted for narcotics trafficking. *Id.* at 1358–59. While two officers went inside the residence, a third officer (Medrano) waited outside to prevent anyone from entering the residence, including someone who was in the driveway and whom the officers knew to be a homicide suspect. *Id.* at 1359. Medrano asked the person to sit down in the carport. *Id.* Over the next fifteen minutes, Medrano instructed seven more individuals who approached the residence to sit in the carport area. *Id.* One of these individuals—Maddox—had arrived in a truck, and Medrano saw Maddox reach under the seat as the truck approached. *Id.* Additionally, Maddox ignored Medrano's instructions to sit down and was acting erratically. *Id.* Medrano called for backup and asked the newly arrived officers to pat down everyone in the carport. *Id.* at 1359–60. Maddox told an officer he had a concealed gun; the officer handcuffed and disarmed him. *Id.* at 1360.

The Tenth Circuit "found that the 'protective detention' executed by Medrano should be analyzed under the same standard as the 'protective sweep' described in *Maryland v. Buie*." *Smith*, 678 F. Supp. 2d at 1154–55 (citing *Maddox*, 388 F.3d at 1362). That is, "in light of the totality of the circumstances," the issue is whether the officer had "a reasonable and articulable suspicion that [the person detained] posed a threat to the officers on the scene that justifies the detention of

[that person] [at the scene] for the duration of [the] arrest . . . ." *Id.* at 1155 (quoting *Maddox*, 388 F.3d at 1365). The Court must balance the person's "Fourth-Amendment interests against the governmental interest in officer safety[,]" and the seizure must be justified not only at its inception, but "the scope of seizure employed must also be reasonable under the circumstances." *Id.* (quoting *Maddox*, 388 F.3d at 1367) (internal citation omitted)).

The Tenth Circuit found that the totality of the circumstances justified the protective "detention of Maddox, without probable cause, for the safety of the officers . . . ." *Id.* at 1169 (citing *Maddox*, 388 F.3d at 1366). First, officers inside of the residence were there to arrest "a narcotics trafficker, and such arrests are known to be highly dangerous . . . ." *Id.* (citing *Maddox*, 388 F.3d at 1366). The residence was in a known dangerous location and "it was getting dark . . . ." *Id.* at 1169–70 (citing *Maddox*, 388 F.3d at 1366). Medrano was outnumbered, with one of the individuals in the carport acting erratically and another a known murder suspect. *Id.* at 1170 (citing *Maddox*, 388 F.3d at 1366). Finally, Medrano had seen Maddox reach under the seat of the truck, and he was worried that Maddox had retrieved a weapon. *Id.* (citing *Maddox*, 388 F.3d at 1366).

Judge Browning distinguished the circumstances of *Maddox* from those before the Court in *Smith v. Kenny*. 678 F. Supp. 2d at 1169–70. In *Smith*, officers received a tip from a restaurant worker who had seen a murder suspect in a vehicle; the worker gave the officer the vehicle's license plate number. *Id.* at 1130–31. Shortly after 1:00 a.m., more than five hours after officers received the tip, they found the vehicle at the residence where it was registered. *Id.* at 1131–32. At approximately 2:00 a.m., an officer made contact with a male inside the residence, and he agreed to come out with the other occupant. *Id.* at 1134–35. As the two people exited the residence, the officers had them "turn around, place their hands on their heads, and walk backwards toward the officers[,]" some of whom were pointing weapons at them. *Id.* at 1170.

8

In finding that the officers were not justified in conducting a protective detention in *Smith*, the Court found several factors distinguishable from *Maddox*: the residence was not in a bad part of town, the officers were not outnumbered, there was no reason to believe the individuals were armed, and the individuals were not acting erratically. *Id.* at 1170. Moreover, the officers were not sure that the murder suspect was inside the residence in *Smith*, whereas they had confirmation that the suspect was in the residence in *Maddox*. *Id.* at 1170–71. In total, the Court found that "[e]ven if the officers' concern" for their safety "had been reasonable, the officers—by brandishing their weapons, handcuffing the [individuals], putting [them] in police cars, transporting them to a remote location, and questioning them over the course of approximately forty-five minutes— exceeded the permissible bounds of a protective detention." *Id.* at 1171 (citations omitted).

The allegations in this case rest somewhere between *Smith* and *Maddox*. Unlike in *Smith*, the officers here did not brandish their weapons at Plaintiff Zina or question her for any length of time. But similar to *Smith* (and unlike in *Maddox*), there are no allegations that the residence was in a dangerous neighborhood, it was likely not getting dark at 7:30 p.m. in August, and the officers were not present to either serve a warrant, nor did they believe anyone was a homicide suspect. And while it appears that the officers were outnumbered three to two, at least one of the individuals (Plaintiff Robert) was already in handcuffs when Plaintiff Zina approached Defendants to ask about her family. (Doc. 1 at ¶¶ 34–35, 40.) On the other hand, there had just been a violent incident between Defendants and Plaintiff David. (*Id.* at ¶¶ 29–32.) While there is no indication from the complaint that Plaintiff Zina was combative or acting erratically, she had allegedly just seen Defendants assault her husband, break his arm, and arrest her son. (*Id.* at ¶¶ 29–34.) Deputy Rightsell had also told Plaintiff Zina that her son was "acting like a bitch." (*Id.* at ¶ 36.) If the officers were worried that Plaintiff Zina was upset or angry, it appears to the Court they had good

reason to be. What started as a fairly calm "civil standby" had turned into conflict. And the only family member who was not under arrest had access to "several firearms" in her vehicle. (*Id.* at ¶¶ 24, 27.) The Court finds that this fact, coupled with the potential volatility of the situation, made this protective detention reasonable at its inception.

> **b.      The protective detention was reasonably related in scope to the circumstances.**

"Once a detention is deemed to have been legal at its inception, we look only to 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Kinzalow*, 236 F. App'x 414, 418 (10th Cir. 2007) (quoting *Maddox*, 388 F.3d at 1368) (citing *Terry*, 392 U.S. at 20)). In the context of investigative detentions, courts have consistently held that handcuffs are an appropriate use of force to protect officer safety and maintain the status quo where officers have a reason to believe that a suspect is armed and dangerous. *See United States v. Perea*, 374 F. Supp. 2d 960, 976 (D.N.M. 2005); *see also United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993); *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993). The Tenth Circuit has also upheld an officer's use of handcuffs during a temporary protective detention. *Kinzalow*, 236 F. App'x at 417–18.

In *Kinzalow*, officers went to an apartment with an arrest warrant for a suspect in a drive-by shooting. *Id.* at 416. When the officers entered the residence, one officer arrested the suspect, and a second officer ordered three other individuals to get on the ground while the officer handcuffed them. *Id.* One of the individuals informed the officer that Kinzalow, one of those in handcuffs, often carried guns and drugs. *Id.* An officer removed all three handcuffed individuals from the apartment and asked Kinzalow "whether he had any guns, knives, drugs, or anything sharp that might poke the officer during [a] pat down." *Id.* at 417. Kinzalow admitted to having a

knife and an ounce of marijuana in his pockets; the officer patted him down, removed the contraband, and arrested him. *Id.* The Tenth Circuit analyzed the initial encounter, including the handcuffing and the removal of Kinzalow from the apartment, as a protective detention. *Id.* at 417–18 (citing *Maddox*, 388 F. 3d at 1362). Because of the three individuals' proximity to the murder suspect being arrested, the court found that the officers were justified in handcuffing and then removing them from the area.[2] *Id.* at 418.

In the context of investigative detentions, the Tenth Circuit has found that moving a detainee away from the scene of an initial encounter may, but does not always, transform the investigative detention into an arrest. *See United States v. White*, 584 F.3d 935, 955 (10th Cir. 2009). "[P]olice may move a suspect without exceeding the bounds of an investigative detention when it is a reasonable means of achieving the legitimate goals of the detention given the specific circumstances of the case." *Id.* at 953 (quoting *United States v. Charley*, 396 F.3d 1074, 1080 (9th Cir. 2005) (internal citations omitted); citing *United States v. Gori*, 230 F.3d 44, 56 (2d Cir. 2000) ("[I]t is well established that officers may ask (or force) a suspect to move as part of a lawful *Terry* stop.") (internal citations omitted)).

In *White*, a highway patrol officer suspected that a car he pulled over for a traffic violation contained drugs. 549 F.3d at 942. Rather than wait for another officer to bring a drug dog, the officer requested that the driver follow him to the KDOT office, which was approximately eight to nine miles away from the initial stop. *Id.* at 943. The Tenth Circuit held that because the officer

---

[2] The opinion is not completely clear, but it appears that the officer's pat-down search of Kinzalow elevated the encounter thereafter to an investigative detention. *United States v. Kinzalow*, 236 F. App'x 414, 418 (10th Cir. 2007) ("an officer may conduct a pat-down search (or 'frisk') if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous") (quoting *United States v. Hishaw*, 235 F.3d 565, 570 (10th Cir. 2000) (finding that an officer's stop and subsequent pat-down search during an investigative detention was reasonable under the circumstances) (internal citations omitted)).

had a reasonable suspicion of drug trafficking based on the totality of the circumstances, and because having the driver follow the officer to KDOT was for the convenience of the driver and was not highly intrusive, the investigative detention was lawful and did not escalate into an arrest. *Id.* at 953–56. The Tenth Circuit found it important that the officer did not lead the driver to a police station, but to a KDOT parking lot. *Id.* at 955. "While there are admittedly no bright lines in this area of jurisprudence, courts have reiterated that transporting a suspect to a police station weighs heavily in the reasonableness analysis." *Id.* (citing *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (internal citations omitted); *United States v. Shareef*, 100 F.3d 1491, 1508 (10th Cir. 1996) (internal citations omitted)). *See also Hayes v. Florida*, 470 U.S. 811, 812, 814 (1985) (finding that an investigative detention morphed into an unlawful arrest where officers visited suspect at home without warrant and told him they would arrest him if he did not accompany them to station to be fingerprinted); *United States v. Mendoza-Trujillo*, 46 F. Supp. 3d 1204, 1211–12, 1223–29 (10th Cir. 2014) (finding seizure was an unlawful arrest without probable cause where officers involuntarily removed a witness to a home invasion from his home, took him to police station, interrogated him, and held him in custody for seven hours); *United States v. Arango*, 912 F.2d 441, 443, 447 (10th Cir. 1990) (finding that investigative detention turned into an arrest where a trooper took an individual's license and registration and had the driver follow him to the sheriff's office).

Defendants' seizure of Plaintiff Zina comes dangerously close to an unlawful arrest, but after examining the totality of the circumstances, the Court finds under the facts in the Complaint it was a lawful protective detention from start to finish. The civil standby had turned into a volatile encounter. The officers were reasonably concerned about their safety where they had actual knowledge that Plaintiff Zina had several firearms in her vehicle. To keep Plaintiff Zina from having immediate access to her firearms, Defendants made the decision to handcuff and transport

her to the same hospital where they were taking her husband. (*See* Doc. 1 at 37, 40.) *See also Perea*, 374 F. Supp. 2d at 976; *Merkley*, 988 F.2d at 1064. The Court takes special notice that Defendants took her to the hospital, not to a police station. *See White*, 549 F.3d at 955.

And while there are no allegations that Defendants gave Plaintiff Zina a choice in the matter, there are also no allegations that any deputy ever interrogated her, *see, e.g.*, *Cortez*, 478 F.3d at 1130 (finding that where an unarmed individual was not a suspect in an investigation, the fact that officers escorted her to a locked patrol car, separated her from her telephone, and interrogated her went beyond the bounds of a lawful investigative detention), *Mendoza-Trujillo*, 46 F. Supp. 3d at 1228–29; held her driver's license or other personal effects, *see Arango*, 912 F.2d at 447; or pulled a weapon in her presence, *Perdue*, 8 F.3d at 1462. Moreover, the length of time Defendants held Plaintiff Zina was minimal—the hospital was less than ten miles from her home, and the deputy immediately released her upon arrival at the hospital. *See Mendoza-Trujillo*, 46 F. Supp. 3d at 1224 (finding that the length of the investigative detention is significant) (citations omitted). The Court finds Defendants' conduct was not highly intrusive and was "based upon a reasonable and articulable suspicion of potential danger to the arresting officers." *Maddox*, 388 F.3d at 1367 (citing *Buie*, 494 U.S at 333). To ensure officer safety in a situation where emotions likely ran high and Plaintiff had easy and obvious access to firearms at the scene of the original incident, Defendants handcuffed and removed Plaintiff Zina from access to the weapons in her vehicle for the brief amount of time it took to drive to the hospital—a legitimate goal given the circumstances. *See White*, 584 F.3d at 953. The Court finds that the protective detention was "no more than necessary to protect the officers from harm," and Defendants took "reasonable steps to ensure their safety after, and while making, the arrest." *Id.* (quoting *Buie*, 494 U.S. at 333, 334

(brackets omitted)). The detention lasted "no longer than [was] necessary to dispel the reasonable suspicion of danger . . . ." *Id.* (quoting *Buie*, 494 U.S. at 335–36).

### 2.      Law Regarding Excessive Force

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Cortez*, 478 F.3d at 1125 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry*, 392 U.S. at 22–27)). "The degree of physical coercion that law enforcement officers may use is not unlimited, however, and '*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard . . . .'" *Id.* (quoting *Graham*, 490 U.S. at 395).

The Court analyzes "the force applied in this case in the context of an arrest" of Plaintiff Robert and a protective detention of Plaintiff Zina. *Cortez*, 478 F.3d at 1126 (citation omitted). "While the nature of the inquiry under either alternative does not differ, *see Graham*, 490 U.S. at 396, the benchmark for what is reasonable does differ, *see United States v. Merritt*, 695 F.2d 1263, 1274 (10th Cir. 1982)." *Cortez*, 478 F.3d at 1126. "This is in part because police have historically been able to use more force in making an arrest than in effecting an investigative" or protective detention. *Id.* (citing *Perdue*, 8 F.3d at 1464). "Thus, the excessive force inquiry evaluates the use of force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Id.* Where officers make an unlawful arrest (one without probable cause) or an unlawful protective detention (one without reasonable suspicion of potential danger), "but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force." *Id.*

Because Defendants have moved for qualified immunity on the excessive force claim, Plaintiffs are "required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." *Cortez*, 478 F.3d at 1128. Courts evaluate objective reasonableness "under a totality of the circumstances approach [considering] the following factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir. 2008) (quoting *Graham*, 490 U.S. at 396 (internal citation omitted)). "Additionally, 'the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* at 1152 (quoting *Graham*, 490 U.S. at 396 (internal citation omitted)). "That perspective includes an 'examination of the information possessed by the [officers]." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

### a.   Plaintiff Robert has not made sufficient allegations to maintain a claim of excessive force.[3]

The allegations show that Defendants handcuffed and arrested Plaintiff Robert for resisting, evading, or obstructing an officer. (Doc. 1 at ¶ 34.) It is unclear from the allegations who handcuffed or arrested Plaintiff Robert, possibly it was Defendant Abernathy, who signed the police report about the incident. (*Id.* at ¶ 46.) In determining whether officers used excessive force during the arrest, the Court need not make a finding on whether the arrest was lawful. *See Cortez*,

---

[3] Defendants Abernathy and Rightsell only moved for qualified immunity on the claims of excessive force for Plaintiffs Robert and Zina, not for Plaintiff David. (*See* Docs. 16 at 7–8; 28 at 1 ("Defendants seek dismissal only of the excessive force claims brought by Robert and Zina Holmstrom.").)

478 F.3d at 1126. "[A] plaintiff's right to recover on an excessive force claim is [not] dependent upon the outcome of an unlawful seizure claim." *Id.* at 1126–27 (citation omitted).

"The Supreme Court has stated that a small amount of force, such as an arrest where one is handcuffed, placed in a police vehicle, and taken to the police station may be inconvenient and embarrassing, but it does not rise to the level of excessive force." *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1269 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55, (2001)). Because Defendants were arresting Plaintiff Robert, they were justified in handcuffing him incident to that arrest. *Id.* The Court finds their decision was reasonable. The issue becomes then, "whether in these circumstances the *manner* in which the officers handcuffed" him, where they allegedly seized and manhandled him, "constituted excessive force." *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009). (*See also* Doc. 1 at ¶ 58.)

"If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force." *Fisher*, 584 F.3d at 893–94 (quoting *Cortez*, 478 F.3d at 1127). To succeed on his claim, Plaintiff "must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Id.* (quoting *Cortez*, 478 F.3d at 1129 n.25 (internal citation omitted)).

In examining Plaintiff's allegations that Defendants "seized and manhandled" him during the arrest, the Court is mindful that "the Fourth Amendment 'does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Id.* (quoting *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (internal citation omitted)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates

the Fourth Amendment." *Id.* (quoting *Graham*, 490 U.S. at 396 (internal citation omitted)). The Tenth Circuit has noted the importance of taking "seriously that this 'calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, at 396–97).

"Assessing the *Graham* factors—and the overall objective reasonableness of the situation—[the Court finds] that a reasonable jury" would *not* find that the force used by Defendants was greater than was "reasonably necessary to effect a lawful seizure." *Id.* at 894–95. First, Defendants arrested Plaintiff Robert for a misdemeanor, which the Tenth Circuit has found is "non-severe" in an excessive force analysis. *Id.* at 895 (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) ("finding a crime non-severe in excessive force analysis because it was a misdemeanor under state law"); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) ("same")); *see also* N.M. Stat. Ann. § 30-22-1 (1978). But again, handcuffing an individual is a normal part of a custodial arrest. *See Atwater*, 532 U.S. at 354–355. The Court finds this factor falls slightly in favor of Defendants.

"The second *Graham* factor—whether the officers had reason to fear for their safety or the safety of others—" also falls in favor of Defendants. *Id.* Defendants had reason to be concerned for their safety: they were outnumbered by Plaintiffs, they had just engaged in a violent altercation with Plaintiff Robert's father, and they knew Plaintiffs had access to several firearms located steps away in Plaintiff Zina's vehicle. The third *Graham* factor, whether Plaintiff Robert was actively resisting or evading arrest, falls slightly in favor of Robert. *See Fisher*, 584 F.3d at 896. While Defendants ultimately arrested Plaintiff Robert for resisting, evading, or obstructing a police

officer, there are no allegations that he was actively resisting or evading *arrest*. Overall, the balance of the *Graham* factors rests slightly in favor of Defendants.

Where, as here, "handcuffing is permissible yet the *manner* of handcuffing may render the application of force excessive," "the *Graham* factors are less helpful in evaluating the *degree* of force applied." *Fisher*, 584 F. Supp. 3d at 896. In these "manner of handcuffing" claims, courts supplement the initial inquiry with "an examination of the resulting injury . . . ." *Id.* at 896–97. In *Fisher*, for example, officers responded to a call from a woman who said that her husband had mistakenly shot himself twice. *Fisher*, 584 F. Supp. 3d at 891. Even though the officers could see the gunshot wounds in the man's bicep and stomach, they ignored his pleas and cries when they forced him to lie on the ground and put his hands behind his back, where an officer put her knee in his back (putting pressure on his stomach wound), and forced his arms behind his back despite the wound on his bicep. *Id.* at 891–92. The Tenth Circuit found that even though handcuffing was permissible incident to the arrest for a petty misdemeanor, the manner in which the officer effected the handcuffing was unreasonable. *Id.* at 895–96.

Here, the Complaint contains only generic allegations that Defendants "seized" and "manhandled" Plaintiff Robert, which resulted in emotional injuries. (*See* Doc. 1 at ¶¶ 51, 58.) And while the Court is to construe all allegations in a light most favorable to Plaintiffs, *see In re Gold Res. Corp. Sec. Litig.*, 776 F.3d at 1108, Plaintiffs must also supply factual assertions that are sufficient to support a plausible claim for relief. *See Iqbal*, 556 U.S. at 678–79. That Defendants "seized" and "manhandled" Plaintiff Robert is not enough, without more detailed factual allegations, to overcome the Court's finding that the handcuffing was permissible as incident to an arrest. Moreover, Plaintiff Robert never specifically identifies who arrested or handcuffed him. (*See* Doc. 1 at ¶¶ 34, 58.) The Court finds that these minimal assertions are too conclusory to

withstand dismissal. *See, e.g.*, *Silvan v. Briggs*, 309 F. App'x 216, 224–25 (10th Cir. 2009) (finding no excessive force where plaintiff claimed that handcuffing produced chaffing and soreness of wrists and extreme emotional trauma); *Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1218–19 (D.N.M. 2010) (finding no excessive force where plaintiff claimed psychological (but no actual physical) trauma, but provided no specific allegations such as "social stigma, nightmares, a need for therapy, or even a new-found distrust of or discomfort around police officers"); *Salazar v. Castillo*, No. 12-CV-01481-JLK, 2013 WL 69154, at *3 (D. Colo. Jan. 7, 2013) (finding that where plaintiff alleged that officer struck him with baton causing an unspecified injury, allegations were conclusory and insufficient to state a claim for excessive force); *Rocha v. Zavaras*, No. 10-CV-00357-CMA-MEH, 2011 WL 1158003, at *13 (D. Colo. Feb. 23, 2011) (finding, among other reasons, that the fact plaintiff did not the identify the guard who handcuffed him was insufficient to make a claim of excessive force).

The Court is reluctant, however, to foreclose Plaintiffs from the opportunity to amend their Complaint to include more specific allegations. The Court will grant Defendants Abernathy and Rightsell's motion without prejudice on the basis that Plaintiff Robert failed to state a claim for excessive force. The Court makes no finding on whether Defendants Abernathy and Rightsell are entitled to qualified immunity at this stage of the proceedings.

### b. Plaintiff Zina has not brought sufficient allegations to maintain a claim of excessive force.

The Court has already found that Defendants' conduct in handcuffing and transporting Plaintiff Zina incident to a protective detention was justified given the circumstances. *See supra* Part IV(A)(1)(a)–(b). Plaintiff Zina has made the same claims as Plaintiff Robert, that the Defendants "seized" and "manhandled" her, resulting in mental distress, fear, severe anxiety and

emotional suffering. (Doc. 1 at ¶¶ 37, 49, 57.) Again, these allegations are too conclusory to withstand dismissal. Moreover, Plaintiff Zina also fails to identify which Defendant handcuffed her. The Court will dismiss the excessive force claim without making findings on whether Defendants Abernathy and Rightsell are entitled to qualified immunity. If Plaintiffs move to file an amended complaint, they will need to support their excessive force claim with much more specific factual allegations regarding the force Defendants used, as well as the scope of their emotional injuries.

> **3.     The Court will dismiss Plaintiffs' claim for excessive force against Defendant Coon.**

Plaintiffs also bring a claim against Defendant Coon for excessive force. (*See* Doc. 17 at 4–5.) Plaintiffs contend that Defendant Coon was negligent in inadequately screening Defendants Rightsell and Abernathy when they were hired; they make no allegations that Coon otherwise personally participated in the seizures on August 3, 2013. (Doc. 1 at ¶ 67(a); *see also* Doc. 17 at 4–5.) "[V]icarious liability is inapplicable to" claims under § 1983. *Iqbal*, 556 U.S. at 676. Instead, "[i]ndividual liability under § 1983 must be based on *personal involvement* in the alleged constitutional violation." *Fogarty*, 523 F.3d at 1162 (internal citation omitted) (emphasis added). "Personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Id.* A supervisor "may be liable for a subordinate's constitutional deprivations . . . where an '"affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise . . . .'" *Id.* (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (internal citation omitted)).

It is not clear from their Complaint or their response to Defendant Coon's motion to dismiss, but it appears Plaintiffs argue that because Defendant Coon knew Defendant Rightsell had "been the subject of citizen complaints and civil lawsuits for his conduct as a law enforcement officer" but hired him anyway, there is an affirmative link between Coon's hiring decision and the excessive force Rightsell allegedly used on Plaintiffs. (Docs. 1 at ¶¶ 65, 67; 17 at 4–5.) Plaintiffs make no allegations concerning any past conduct on the part of Defendant Abernathy.

Plaintiffs' claim fails. For a supervisor to be liable under § 1983, the conduct at issue "must be predicated on the supervisor's deliberate indifference, rather than mere negligence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citing *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (internal citation omitted)). To be guilty of "deliberate indifference," the defendant must know "his actions created a substantial risk of constitutional injury." *Dodds v. Richardson*, 614 F.3d at 1185, 1205–06 (10th Cir. 2010) (citing *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1154–55 (10th Cir. 2006) ("explaining that the plaintiff 'must point to evidence that would establish [the defendant] knew he was creating a situation that created a substantial risk of constitutional harm' to establish the defendant acted with deliberate indifference"); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) ("determining that a plaintiff may show the defendant acted with the deliberate indifference required to establish a Fourteenth Amendment due process violation by providing evidence the defendant 'had subjective knowledge of a risk of harm and disregarded that risk by actions beyond mere negligence'")).

Plaintiffs failed to make any specific factual allegations that would show Defendant Coon was deliberately indifferent. In the context of a municipal liability claim for inadequate hiring under § 1983, for example, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right

will follow" a hiring decision. *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 411 (1997). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* Plaintiffs have made no allegations that would show that it was "plainly obvious" that hiring Defendants Abernathy and/or Rightsell would result in the deprivation of Plaintiffs' constitutional rights.

Moreover, Plaintiffs specifically allege that the inadequate screening was due to negligence. (Doc. 1 at ¶ 67 ("Defendant[] . . . Coon's negligence includes but is not limited to . . . inadequate screening of Defendants Rightsell and Abernathy . . . .").) Negligent conduct is insufficient to hold a supervisor liable under § 1983. *Green*, 108 F.3d at 1302. For these reasons, Plaintiffs have failed to state a claim for excessive force against Defendant Coon, and the Court will dismiss the claim without prejudice.

**B.   Count II—Negligent, Hiring, Training, Supervision and Retention Against Defendants Chaves County, Chaves County Sheriff's Department, and Coon**

Plaintiffs contend that "Defendants Chaves County, Chaves County Sheriff's Department, and Coon were negligent in hiring, training, supervising, and training Defendants Rightsell and Abernathy." (Doc. 1 at ¶ 66.) As an initial matter, Defendants contend that all claims against the Chaves County Sheriff's Department should be dismissed, because any claims against the Sheriff's Department are merged into claims against the County. (Doc. 11 at 1 n.1.) The Court agrees. A sheriff's department is not a separate suable entity. *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985). Where Plaintiffs make claims against the Sheriff's Department, the Court will treat

them as claims against Chaves County. The Chaves County Sheriff's Department is, therefore, dismissed from this suit.

Defendants also argue that Count II fails because Plaintiffs cannot demonstrate that Defendants Chaves County (under a theory of municipal liability) or Coon (under a theory of individual liability, presumably in his supervisory capacity) were deliberately indifferent to Plaintiffs' rights. (Doc. 11 at 9.) The Court will examine each theory of liability separately.

### 1. The Court will dismiss Plaintiffs' claims for negligent hiring, training, supervision, and retention against Defendant Coon.

To establish supervisory liability for their claim, Plaintiffs' Complaint must contain allegations sufficient to show Defendant Coon was personally involved in the alleged constitutional violation.[4] *See Dodds*, 614 F.3d at 1195 (citations omitted). "To establish supervisory liability, 'a plaintiff must show that (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Reid v. Pautler*, 36 F. Supp. 3d 1067, 1215 (D.N.M. 2014) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal citation omitted)). Plaintiffs have failed to allege facts sufficient to maintain their claims under Count II.

First, Plaintiffs have "not alleged that [Defendant Coon] acted pursuant to a policy, or that [he] promulgated, created, implemented, or possessed responsibility for a policy that caused the alleged constitutional harms." *Id.* Second, the Court has found that there are insufficient allegations to show that Defendant Coon knew "his actions" in hiring Defendants Abernathy and Rightsell

---

[4] While the Court has found that Plaintiffs fail to allege facts sufficient to support Plaintiffs Robert and Zina's excessive force claim, the Court has made no findings on any such claim from Plaintiff David. The Court will assume that Plaintiffs have some kind of constitutional claim for purposes of this section.

"created a substantial risk of constitutional injury." *Dodds*, 614 F.3d at 1205 (citation omitted). This is also true for the remaining allegations that he inadequately trained, supervised, or retained Defendants. Simply reciting that Defendant Coon's actions were "willful, wanton, malicious and in utter disregard and indifference for Plaintiffs' legal rights" is insufficient under *Iqbal* to state a plausible claim for relief. *See* 556 U.S. at 678–79. Finally, the Court has found that the actual title of Count II is problematic, in that Plaintiffs may not maintain claims for *negligent* hiring, training, supervision, and retention under § 1983; Defendant's conduct must have been deliberate. *See Green*, 108 F.3d at 1302. For these reasons, the Court will grant Defendants' motion to dismiss the claims under Count II for supervisory liability against Defendant Coon.

  **2.**  **The Court will dismiss Plaintiffs' claims for negligent hiring, training, supervision, and retention against Defendant Chaves County.**

  "[T]o establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom and the injury alleged." *Chavez v. Cty. of Bernalillo*, 3 F. Supp. 3d 936, 980 (D.N.M. 2014) (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)). Plaintiffs' Complaint is devoid of any allegations regarding a custom or policy concerning hiring, training, supervision, or retention. (*See* Doc. 1.) Moreover, Plaintiffs allege that Defendant Chaves County's conduct was negligent. (*Id.* at ¶ 67.) "When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1294–95 (D.N.M. 2015) (citing *Graves*, 450 F.3d at 1218 (internal citation omitted)). The same is true for a failure to screen claim: Plaintiffs must "demonstrate that, through its *deliberate* conduct, the

24

municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okla.*, 520 U.S. at 404. Plaintiffs may not maintain their § 1983 claims against Chaves County based on negligence. *See Green*, 108 F.3d at 1302. For these reasons, the Court will grant Defendants' motion and dismiss without prejudice as to Count II on the basis that Plaintiffs fail to state a claim.

### C.      Count III—Malicious Prosecution Against Defendant Coon

Plaintiffs bring a claim for malicious prosecution under § 1983 against "all named officers"; only Defendant Coon moved to dismiss the claim in his motion. (*See* Docs. 1 at ¶¶ 71–80; 11 at 8–9; 17 at 7–9.) In this claim, Plaintiffs contend that the defendant officers falsely arrested Plaintiffs David and Robert, conducted little to no investigation before seizing them, and maliciously prosecuted them for crimes they did not commit. (*Id.* at ¶ 72–74.) It appears from their brief that Plaintiffs assert their claim against Defendant Coon in his individual (rather than supervisory) capacity. (*See* Doc. 17 at 7–9.) "Personal 'liability under § 1983 must be based on personal involvement in the alleged constitutional violation.'" *Brown*, 662 F.3d at 1163 (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (internal citation omitted)). Plaintiffs have made no allegations in their Complaint that Defendant Coon was personally involved in their seizure or prosecution. (*See* Doc. 1.) Consequently, they may not maintain a claim against Defendant Coon in his individual capacity for malicious prosecution under § 1983. The Court dismisses the claim against Defendant Coon without prejudice.

### D.      Count IV—Respondeat Superior Against Defendants Chaves County and Chaves County Sheriff's Department

Plaintiffs' fourth count is one for "respondeat superior" against Defendants Chaves County and Chaves County Sheriff's Department. (Doc. 1 at ¶¶ 81–88.) The Court dismissed the Sheriff's

Department and analyzes this claim against Defendant Chaves County only. *See supra* Part IV(B).

Defendant Chaves County moves to dismiss the claim on the basis that respondeat superior is not

a stand-alone cause of action under § 1983. (Doc. 11 at 6.) While Plaintiffs seek relief pursuant to

42 U.S.C. § 1988 in Count IV, Plaintiffs assert that they are not bringing a claim under § 1983, but

under New Mexico state law. (*See* Docs. 1 at ¶ 88; 17 at 3–4.) Plaintiffs agree that respondeat

superior is not a stand-alone claim under § 1983, and thus the Court will dismiss *with* prejudice

any stand-alone claim for "respondeat superior" pursuant to § 1983. *See Dodds*, 614 F.3d at 1194–

95 (noting that "§ 1983 does not allow a plaintiff to hold an individual government official liable

under a theory of respondeat superior") (internal citations omitted)). Defendants did not argue this

issue using New Mexico state law in their response, and they did not provide any controlling

authority for their position in their reply. Consequently, the Court will deny Defendants' motion

to dismiss on this issue.

### E.    Count V—State Tort Claims Against Defendant Coon

Plaintiffs bring a variety of state tort claims (assault, battery, false arrest, and false

imprisonment) against "all named officers" under Count V pursuant to the New Mexico Tort

Claims Act (NMTCA). (Doc. 1 at ¶¶ 89–96.) Defendants argue that because Defendant Coon did

not personally participate in the seizures of Plaintiffs, he cannot be held liable under the NMTCA.

(Doc. 11 at 16–17.) The Court agrees that Defendant Coon would not be liable in his personal

capacity, but Plaintiffs may be seeking to impose supervisory liability on Defendant Coon under a

theory of respondeat superior.[5] *See Cal. First Bank v. New Mexico*, 801 P.2d 646, 649 (N.M. 1990).

---

[5] It is not clear whether Plaintiffs are making this claim under Count IV or Count V, and they did not respond to this issue in their response brief. (*See* Doc. 17.) If Plaintiffs file a motion to amend their Complaint, the Court urges them to make much more specific factual allegations relevant to all of their claims, and specify what causes of action they are basing their claims of respondeat superior on pursuant to the New Mexico Tort Claims Act.

Defendants did not address the issue of liability pursuant to a theory of respondeat superior for the claims under the NMTCA, and the Court declines to rule on the issue without further briefing from the parties. The Court will deny Defendants' motion to dismiss on Count V.

F.    **Punitive Damages Against Defendants Chaves County, Chaves County Sheriff's Department, and Coon**

Plaintiffs seek punitive damages under Count II (negligent hiring, training, supervision, and retention under § 1983) and Count IV (respondeat superior under New Mexico state law). (Doc. 1 at ¶¶ 69, 87.) Defendants Chaves County and Coon assert that Plaintiffs may not recover punitive damages against a municipality in an action under § 1983. (Doc. 11 at 14.) Plaintiffs acknowledge that this is true, and the Court agrees. (Doc. 17 at 11.) Punitive damages are not recoverable from a municipality or from a state actor in an official capacity in § 1983 litigation. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The Court will grant Defendants' request as to Count II: Plaintiffs may not recover punitive damages under Count II from Defendants Chaves County or Coon in his official capacity. Neither Defendants nor Plaintiffs discuss the availability of punitive damages under a state law claim for "respondeat superior," and the Court declines to reach the issue without briefing from the parties. The Court will deny Defendants' motion with respect to punitive damages sought under Count IV pursuant to state law or against Defendant Coon in his individual capacity pursuant to § 1983.

V.    **Conclusion**

Because it is not patently obvious that allowing Plaintiffs the opportunity to amend their Complaint would be futile, where the Court dismisses any claim, it is without prejudice. The only exception is under Count IV as described below. The Court makes no findings on qualified

immunity. The Court will allow Plaintiffs two weeks to file an amended Complaint with much more specific factual allegations that support any claim they intend to bring.

The Court will dismiss the Chaves County Sheriff's Department from this suit because it is not a suable entity.

Count I: Plaintiffs have failed to plead sufficient facts to state a claim for excessive force as to Robert or Zina, and the Court will grant Defendants Abernathy and Rightsell's motion to dismiss without prejudice. The Court makes no finding on whether Defendants Abernathy and Rightsell are entitled to qualified immunity at this stage of the proceedings.

All Plaintiffs have failed to state a claim for excessive force against Defendant Coon, and the Court will dismiss the claim without prejudice without making a finding on qualified immunity.

Plaintiff David's claim for excessive force remains under Count I.

Count II: Plaintiffs have failed to plead sufficient facts to maintain claims for supervisory liability against Defendant Coon or municipal liability against Defendant Chaves County for negligent hiring, training, supervision, and retention under § 1983, and the Court will grant Defendants Chaves County and Coon's motion to dismiss without prejudice. No claims remain under Count II. The Court makes no finding on whether Defendant Coon is entitled to qualified immunity on this issue.

Counts III: Plaintiffs have failed to plead sufficient facts to maintain a claim for malicious prosecution under § 1983 against Defendant Coon. The Court will grant Defendant Coon's motion to dismiss Count III without prejudice without making a finding on qualified immunity.

Plaintiffs' claims for malicious prosecution under § 1983 remain as to Defendants Abernathy and Rightsell.

Count IV: Plaintiffs agree that they may not maintain a claim for vicarious liability under § 1983, and the Court will dismiss with prejudice any stand-alone claim for "respondeat superior" pursuant to § 1983. The Court will deny Defendants' motion to dismiss on this issue with respect to any claim under the doctrine of respondeat superior under New Mexico state law.

Count V: Plaintiffs have failed to plead facts sufficient to hold Defendant Coon liable for any intentional torts under the NMTCA in his personal capacity, and the Court grants Defendants' motion in part on this issue. The Court denies Defendants' motion on this issue with respect to any claims against Defendant Coon in his supervisory capacity.

Plaintiffs' state tort claims in Count V remain as to Defendants Abernathy and Rightsell in their personal capacity and against Defendant Coon in his supervisory capacity.

Punitive Damages Claims: Defendants Chaves County and Coon's motion to dismiss is granted with respect to Plaintiffs' claims for punitive damages against the municipality or Coon in his official capacity on the claims pursuant to § 1983. The Court denies the motion with respect to Defendant Coon in his individual capacity under § 1983, and with respect to any claims under Count IV under state law.

**THEREFORE,**

**IT IS ORDERED** that Defendants Board of Commissioners for the County of Chaves, Chaves County Sheriff's Department, and Robby Coon's Motion to Dismiss and for Qualified Immunity (Doc. 11) is **GRANTED IN PART** as outlined *supra* Part V;

**IT IS FURTHER ORDERED** that Defendants Rightsell and Abernathy's Partial Motion to Dismiss on the Basis of Qualified Immunity (Doc. 16) is **GRANTED IN PART** as outlined *supra* Part V;

**IT IS FURTHER ORDERED** that Defendants' motions are **OTHERWISE DENIED;**

**IT IS FURTHER ORDERED** that Defendant Chaves County Sheriff's Department is dismissed from this suit;

**IT IS FURTHER ORDERED** that Plaintiffs have two weeks to file a motion to amend their Complaint pursuant to local rules.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**